MARY LOUISE BILLINGS *vs.* HOPE GLADDING.

MAY 21, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CONDON, J. This is a bill in equity brought in the superior court by this complainant for the construction of the will of Ardelia C. D. Gladding, late of the town of Barrington, deceased, and is certified by the superior court to this court under the provisions of general laws, 1923, chapter 339, sec. 35.

The complainant is a niece of the testatrix and is one of the two beneficiaries named in the will. The respondent is a stepdaughter of the testatrix and the daughter, by his first marriage, of George Drown Gladding, the surviving husband of the testatrix, who was made the executor and the other beneficiary under the will of the testatrix. Since the death of the testatrix and the probate of her will, George Drown Gladding has died intestate, leaving surviving him, as his only heir at law and next of kin, Hope Gladding, the respondent.

Miss Gladding was duly served with a subpoena through her attorney, who accepted service thereof in her behalf, and filed an answer joining in the complainant's prayer, as contained in the bill of complaint, for the construction of the will.

Later, T. Dexter Clarke, Esq., the administrator *d. b. n. c. t. a.* of the estate of Ardelia C. D. Gladding, was, by order of this court, made a party respondent and he has filed a brief and argued the matter before us. The respondent, Hope Gladding, neither argued nor filed a brief in this court.

At the hearing in this court a question was raised by the court as to whether all adversary parties in a proceeding of this nature were before the court. The complainant has filed a supplementary brief on this point, to support her contention that the question as to what parties are necessary to a bill in equity for the construction of a will is quite different from that in the ordinary bill in equity.

The cases cited by complainant in this brief hold that only a bill brought specifically for the construction of, or for instructions relative to, a will or trust deed may be cer-

tified to this court under Sec. 35, when ready for hearing for final decree. *Newport Hospital* v. *Harvey*, 47 R. I. 382; *Maddalena* v. *Masso*, 48 R. I. 92. They do not seem to bear upon the question of whether adversary parties are necessary to the validity of the proceeding. There is some inference from language at the bottom of page 93 of the latter case that all interested parties should be joined in a bill for construction. If we understand the complainant, she contends that, as this proceeding is quite different from the usual proceeding in equity, the strict requirement that adversary parties are necessary to a suit in equity does not obtain in this proceeding. However this may be, we have concluded, upon consideration, that there is a sufficient showing of adversary interests in the parties before us to warrant us in entertaining the case, but it must be understood, however, that only the parties and their privies in interest or estate will be bound by the decision.

Under the third paragraph of the will appears the following provision: "I give devise and bequeath to my husband George Drown Gladding all of my real estate and property real and personal wherever and however situated and including any real estate and personal property I may hereafter acquire to my husband George Drown Gladding and after his decease, the remainder to my niece Mary Louise Billings, Goffstown, N. H. daughter of B. Frank and Mary C. Billings of Goffstown, N. H." The complainant contends that it is not clear, from this language, whether George Drown Gladding received an absolute interest in the realty and personalty, or merely a life estate.

What was the intention of the testatrix in using the above-quoted language to dispose of her property? That is what we must ascertain first, before we can answer the main question, and we must seek that intention by a careful scrutiny of her whole will and the circumstances under which it was made. *Hanley* v. *Fernell*, 54 R. I. 84, 86. With this cardinal rule of construction in mind, we find no diffi-

culty in reaching the conclusion that the testatrix intended that her niece Mary Louise Billings, at least on certain contingencies, should enjoy all or some of the property after the death of George Drown Gladding. We do not think that she has given her real property to her husband in language which clearly and unequivocally gave to him a title to such property in fee simple. Therefore, the interest thus given may be diminished by a subsequent disposition without violating the *ratio decidendi* laid down by this court in *Howard for an Opinion,* 52 R. I. 170, 172.

In that case the court was called upon to construe the following clause in a will: "I give and bequeath to my brother John's great granddaughter, Grace C. Huling, all the rest and residue of my estate both real and personal of which I shall die seized and possessed of and wherever situated, whether it be acquired before or after the execution of this Will, to her, her heirs and assigns forever, to be given in the following manner: if my decease shall occur before she shall have arrived at the age of twenty-one years the income from all bank deposits, bonds, stocks, notes, rents or otherwise shall be paid to her until that time when she shall come in full possession thereof." Construing these words, the court held that, as the language showed no intention on the part of the testator to deprive the beneficiary of full and complete ownership in the property, the fee was in the beneficiary, Grace C. Huling. It is obvious that the clause there construed bears no similarity to that which we are asked to construe in the instant case.

The rule of testamentary construction in this State of devises and bequests of this nature is "that in case a testator has made a gift of an absolute estate in fee in land or an unconditional gift of personalty, a subsequent provision inconsistent with the absolute nature of that gift shall be regarded as a repugnant provision and treated as void in law." *Rhode Island Hospital Trust Co.* v. *City of Woonsocket,* 48 R. I. 345; *Cahill* v. *Tanner,* 43 R. I. 403; *Wood*

*for an Opinion,* 28 R. I. 290; *Re Will of Henry C. Kimball,* 20 R. I. 619. But in all of these cases, the court has recognized the rule above stated that the main intention of the testator is the cardinal rule of construction and must govern. *Hanley* v. *Fernell, supra,* and *Howard for an Opinion, supra.*

The above-cited cases will show upon examination that in each instance, in the will submitted to the court for its construction, the language of the gift to the first taker disclosed a clear intention on the part of the testator to make an absolute gift, without anything therein to qualify or limit the absolute nature of such gift. In the *Cahill* case, the language of subsequent disposition was in the form of a request to the original donee. In the *Wood* case, the gift was specifically declared to be "unconditionally", and the words of subsequent disposition were expressed in a separate sentence thus: "After him, should any remain, I give the same to my sister . . . ."

In the *Kimball* case, the will was of personalty and the gift was to testator's daughters absolutely, subject, however, to the condition that said daughters, during their minority, should receive only the income of the bequest, unless, in the opinions of their guardians and the executors of the will, such income was insufficient for their education and support in some emergency or by reason of some extraordinary necessity, in which event so much only was to be taken from the principal as was necessary to meet such emergency. The object of this condition of the will was then stated to be "to the end that my said daughters be in receipt and enjoyment, as nearly as may be, of the entire principal of their respective portions upon the attainment of their majority." This was held to vest an absolute gift in the daughters, notwithstanding language in the two next succeeding paragraphs of the same clause of the will, in which the testator sought to make further disposition of the property bequeathed, in the event of the legatees, or of

any of them, dying before coming of age or dying without issue. The testator concluded such attempted subsequent disposition in these words: "But my intention as above expressed is in no event to be construed as debarring my children from the right of disposing of their aforesaid respective portions by will made after their becoming of age."

The language under consideration in those cases is quite dissimilar to that in the instant case. In the clause of the will before us, we have a gift of real and personal property expressed in a single sentence. The words used, in so far as they relate to the realty, certainly are apt words to create a life estate in the first taker, with remainder over in fee. The testatrix indicates this to be her intention, by saying, immediately after giving the property to her husband, and without any other intervening words indicating a contrary intention, "and after his decease the remainder to my niece." This language creates a life estate in the husband almost as clearly as if the testatrix had said, "to my husband for his life and remainder over to my niece." It is certainly not reasonable to say that this clause taken as a whole indicates an intention on the part of the testatrix to make an unconditional gift of the realty to her husband. On the contrary, this subsequent provision for the benefit of her niece does indicate, by the use of the technical word "remainder", an intention clearly to limit the nature of the gift of the realty to her husband, and we must give effect to such intention.

A difficulty arises, however, in considering what effect to give to this language in so far as the personal property is concerned. In this connection the case of *Pierce* v. *Simmons*, 16 R. I. 689, is of some assistance. There the testator disposed of both his real and personal estate in two separate clauses of his will, as follows: "Second. I give, devise, and bequeath to my wife, Abby Simmons, all my real and personal estate or property of every kind and nature, wheresoever the same may be found, or in whatsoever the

same may consist, including as well any that I may acquire subsequently to the date of this will as that which I am now possessed of, to her and her only. Third. I give, devise, and bequeath, and it is my will that whatever of my said estate, real, personal, and mixed, heretofore given, devised, and bequeathed to my wife, Abby Simmons, that shall or may remain at her death, shall go to and be the property of my sister, Hannah B. Simmons."

It was contended that this language vested in the wife a life estate only, but this court held to the contrary that she had at least the power to sell and convey in fee the land devised. The court, in its opinion, placed particular emphasis upon the importance of the words "to her and her only" at the end of the second clause of the will, and said that these words clearly indicated an intention in the mind of the testator to give his wife the property, "with power to use and dispose of it to the uttermost at her own will and pleasure." The court said that it was not clear that the third clause should not be rejected for repugnancy, but they treated it rather in the nature of a limitation upon the second clause. They gave effect to the testator's intention, as they found it expressed in both clauses, by reconciling the apparently inconsistent language therein as follows: "It seems to us reasonable to suppose that it occurred to him, after he had given his estate to his widow absolutely by the first of said clauses, that some of it might remain undisposed of at her death, and that he would like to have this remnant, whatever it might be, go to his sister, and wrote the following clause accordingly. The language *whatever* shall or may remain' shows clearly that to his mind, as he looked forward, it was uncertain what would remain. The view which we have suggested gives to the later clause its natural and obvious interpretation, and though it qualifies the preceding clause, if both clauses can be sustained, nevertheless it does not really stint the widow, since it leaves to her the use and enjoyment of the entire

estate for life, with power to dispose of it during her life, reserving to his sister only what is left at her decease, and this view is supported by the evidence, since the evidence shows that the widow was obliged to resort to the body of the estate for sustenance, the income being insufficient."

This reasoning appeals to us as even more applicable in the instant case, as to the personalty, and we think that it reflects a liberal construction of the will in keeping with the rule which postulates the first duty of a court to be to find the intention of a testator from the words he has employed in the will to express his intention. Applying this test and this reasoning to the words used by the testatrix here, it is reasonable to conclude that she intended her husband to enjoy her personal property as his own during his life, with the power to change its form and to consume it, but that if any remained at his death, it was to be the property of her niece.

The use by the testatrix of the word "remainder", which, as observed above, has a technical meaning in the law affecting real property, has no technical significance in the law relating to personalty. The use of this technical word, in so far as the real estate is concerned, clearly indicated, as we have said, an intention to vest in George Drown Gladding a life estate only, with a remainder over in fee to Mary Louise Billings. As to the personal estate, the word "remainder" does not indicate so clearly any such intention. Ordinarily, personal property is consumed in its use and the gift of such property is to be deemed unconditional unless the testatrix clearly indicates the limitations she desires imposed on the gift. Here the testatrix has not done this and we are left to infer what her real intention was. As the word "remainder" is without technical significance or purpose in the law relating to personalty, we are not justified in giving it such technical meaning. On the contrary, we must give the word its ordinary meaning which is, "something remaining or left over." The testatrix must

have intended that her husband should have and enjoy her personal estate and not merely the income of it or the mere use of it. If she intended such a limited gift, the most natural and easy way to have made it would have been to say that he should enjoy the income of such property or the use of it. What, then, did she intend by saying that her niece was to have the remainder of her personal estate after the decease of her husband?

We think that the most reasonable construction of the will, and one most consonant with the rule obligating us to search therein first for the intention of the testatrix, justifies us in holding that the gift of the personal property was not merely a gift of its use or the enjoyment of the income thereof, but a gift of the property itself to George Drown Gladding, with full power to use and dispose of it in his lifetime, but with the limitation that, if any remained at his decease, it was to go to Mary Louise Billings. Such a construction limits the unconditional nature of the gift to the husband to the extent only that it does not become his to bequeath by will or transmit by inheritance. Otherwise the gift remains absolute as to George Drown Gladding himself.

Our answer to the complainant's request for construction is that, as to the real estate devised, George Drown Gladding took a life estate with remainder over in fee to Mary Louise Billings, and that, as to the personal estate, he took the same with full power to use and dispose of it in his lifetime, but that any of it not consumed or disposed of by him in his lifetime and remaining at his death should then go to the said Mary Louise Billings, absolutely.

On June 7, 1937, the parties may present a form of decree in accordance with this opinion.

*McGovern & Slattery, Fred B. Perkins, William E. McCabe,* for complainant.

*Walling & Walling,* for respondents.

*T. Dexter Clarke,* pro se ipso.