80 So.2d 633

## Lonnie WILSON, Ex'r,

v.

## H. B. SKELTON, as Guardian, et al.

### 7 Div. 241.

Supreme Court of Alabama.

May 12, 1955.

Rehearing Denied June 23, 1955.

Lusk, Swann & Burns, Gadsden, for appellees.

E. K. Hanby, Jr., Gadsden, for appellant.

STAKELY, Justice.

This appeal involves the construction of the will of E. L. Wilson, deceased. The will was admitted to probate in the Probate Court of Etowah County and the administration of the estate was subse-

quently removed to the circuit court in equity. The administration proceeded to the filing of the account of the executor for final settlement.

In his petition for final settlement, Lonnie Wilson, as executor, alleged in substance that under and by the terms of the will the testator bequeathed to Lela Wilson Wofford, Cornelia Wilson Vernon, Della Wilson Burgess and Maud Wilson Mills, Clifford Wilson, Verney Wilson, Lonnie Wilson, Marie Skelton, Bishop Skelton and Paul Skelton, share and share alike, all of the real estate of which the said E. L. Wilson was seized and possessed of at the time of his death together with his interest in the H. B. Skelton and Company business on the Attalla-Steele Highway in Curtiston, Alabama; that under and by virtue of the terms of paragraph 2 of the will, the said E. L. Wilson, deceased, bequeathed the remainder of his property of which he died seized and possessed to his heirs Lela Wilson Wofford, Cornelia Wilson Vernon, Della Wilson Burgess, Maud Wilson Mills, Clifford Wilson, Verney Wilson and Lonnie Wilson.

The provisions of the will here involved are paragraphs 1 and 2 of the will which read as follows:

"1. It is my will and desire, and I so direct, that at my death my sisters, Lela Wilson Wofford, Cornelia Wilson Vernon, Della Wilson Burgess and Maud Wilson Mills, my brothers, Clifford Wilson, Verney Wilson, Lonnie Wilson and my beloved friends Marie Skelton, Bishop Skelton and Paul Skelton, shall have and share alike of all my real estate, namely my home place on the Attalla-Steele Highway in Curtiston, Alabama; as well as my interest in the H. B. Skelton and Company business on the Attalla-Steele Highway in Curtiston, Alabama, or any other real estate I own wholly or partially.

"2. The remainder of my property, both real and personal, that I die seized and possessed of, I bequeath equally to my above*d* named heirs."

Bishop Skelton and Paul Skelton, minors by H. B. Skelton their legal guardian, and Marie Skelton filed a bill for the construction of the will, taking the position in substance that it was the intention of the testator to designate the persons named in paragraph one of his will as his heirs and that in paragraph two of the will it was his intention that all the persons named in paragraph one of the will should share equally in the remaining portion of the estate. The executor filed an answer denying the allegations of the bill and alleging that it was the intention of the decedent that only the brothers and sisters named in paragraph one of the will should share in the estate as described in paragraph two of the will.

The court entered a decree holding in effect that the words in paragraph two of the will "equally to my above*d* named heirs" included all of the persons named in paragraph one of the will. In other words the court concluded that by the use of the language "my above*d* named heirs" the testator intended to include the Skeltons and that they were entitled to share in the residue of the estate on the same basis as the four sisters and the three brothers named in paragraph one of the will.

The question before the court on this appeal is the construction of the phrase in the will "my above*d* named heirs" in paragraph two of the will. It appears to be conceded that the bill has equity and we think correctly so. Reid v. Armistead, 224 Ala. 43, 138 So. 537; Kaplan v. Coleman, 180 Ala. 267, 60 So. 885.

The evidence introduced on the hearing gives little aid in the intepretation of the will. Lela Wilson Wofford, Cornelia Wilson Vernon, Della Wilson Burgess, Maud Wilson Mills are sisters of the testator. Clifford Wilson, Verney Wilson and Lonnie Wilson are brothers of the testator. Marie Skelton, Bishop Skelton and Paul Skelton are children of the former partner of the testator in the enterprise known as H. B. Skelton and Company on the Attalla-Steele Highway in Curtiston, Alabama.

Prior to the execution of the will in the instant case E. L. Wilson had Olive McDonald Ellis, an insurance agent in Attalla, Alabama, who it seems made a practice of writing wills for her customers, to prepare a will for him. Sometime after the foregoing will was written E. L. Wilson went to H. L. Hammond, a Justice of the Peace in Attalla, Alabama, and asked him to make certain changes in the will. H. L. Hammond in effect told E. L. Wilson that it was not practicable to interline the proposed changes and suggested that a new will be drawn with changes therein as desired by E. L. Wilson. Thereupon H. L. Hammond had his stenographer write another will with the suggested changes and the new will was thereupon signed by E. L. Wilson and witnessed by H. L. Hammond and Mary E. Woodward. H. L. Hammond had no recollection of the changes which were requested to be made or of the contents of the will which was executed.

The appellees offered to make proof that the first will left the entire estate, real and personal, to the Skeltons and that the second will changed the first will by adding the four sisters and three brothers to whom reference has been made. The first will, however, was not produced. The court refused to admit in evidence the proposed testimony. There are no cross assignments of error in the record and we do not have this question before us.

In Abrahams v. Abrahams, 219 Ala. 533, 122 So. 625, 627, it was said:

" 'The heirs at law of a deceased person are those who, in the absence of a will, are appointed by law to inherit his real estate.' * * * ' "Heir" is a legal term, and is used in a legal sense, with a fixed legal meaning. The word has a technical signification, and, when unexplained and uncontrolled by the context, must be interpreted according to its technical sense, or its strict legal import.' * * *" White v. Fowler, 245 Ala. 209, 16 So.2d 399.

■ But the word "heirs" in a will does not necessarily have a fixed meaning and the sense in which the word is used must be ascertained from the language of the will taken as a whole. Guy v. Pruitt, 213 Ala. 422, 104 So. 805; Wilcoxen v. Owen, 237 Ala. 169, 185 So. 897, 125 A.L.R. 539.

In Graham v. De Yampert, 106 Ala. 279, 17 So. 355, 356, the will was not drawn by one acquainted with the significance of the word "heir". In this connection the court said: "We know that this word is commonly used by laymen to indicate all persons entitled by will or otherwise to share in the estates of decedents, and in cases like this as a synonym of 'legatees.' We think it must be given that interpretation here."

■ And, of course, the testator's intention is the pole star to guide a court in the construction of a will and in arriving at the testator's intention the court should consider the instrument as a whole and not construe any paragraph separately. Smith v. Nelson, 249 Ala. 51, 29 So.2d 335.

■ The will in the present case was not written by a lawyer but by one unskilled in legal definitions and under the language in this will we do not think technical definitions should be allowed to prevail. In the first paragraph the testator devised all of his real estate and certain personal property to "my sisters", "my brothers" and "my beloved friends", especially naming them. In the second paragraph the testator disposed of the residue of his estate "to my aboved named heirs". It is evident that the testator did not wish to die intestate, Baker v. Wright, 257 Ala. 697, 60 So. 2d 825 and, therefore, since he did not bequeath all of his personal property in the first paragraph a residuary clause became necessary. The report for final settlement of the executor showed personal property other than the testator's interest in the H. B. Skelton and Company business on the Attalla-Steele Highway in Curtiston, Alabama, as, for example, the bank account of testator aggregating $3,125.72 and other items referred to in the report of the executor.

It is argued that if the testator had intended that all the persons mentioned in the first paragraph should be considered as his heirs, then it would not have been necessary to have a residuary clause. In other words, it is the idea that the testator could have bequeathed in paragraph one his entire estate to the persons named in paragraph one.

But it may equally be said that since the testator devised in the first paragraph all of his real estate and certain personal property to "my sisters", "my brothers" and "my beloved friends", it would have been an easy matter, if it was the intention of the testator to have limited the disposition of the residuary estate to his sisters and brothers, to have said so in the residuary clause by limiting those taking under the residuary clause to my named sisters and brothers. However, the testator did not do that. The residuary estate was left "to my above named heirs".

The testator had the right to frame the will as he chose and once having written the first paragraph as he did it is evident that he wished to go further and dispose of the balance of his property in a residuary clause. In all of this we should keep in mind the fact that the will was not drawn by a lawyer versed in legal definitions but by a layman. Accordingly, it should be construed from the standpoint of a layman and, as we have shown, the word "heirs" can be used to describe all those taking under the will. We think it clear that in using the words "my above named heirs" the testator intended that all of the persons mentioned in the first paragraph should share equally in the residue.

It results that the decree of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and GOODWYN, MERRILL and MAYFIELD, JJ., concur.

LAWSON and SIMPSON, JJ., dissent.