Nan W. ROBERTSON, as Executrix of the Estate of James B. Robertson, deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 9500.

United States District Court
N. D. Alabama, S. D.

Nov. 1, 1961.

Lee C. Bradley, Jr., Edward M. Selfe, and Hobart A. McWhorter, Jr. (of White, Bradley, Arant, All & Rose), Birmingham, Ala., for plaintiff.

W. L. Longshore, U. S. Atty., and M. L. Tanner, Asst. U. S. Atty., Birmingham, Ala., Louis F. Oberdorfer, Asst. Atty. Gen., and James P. Garland, Charles Mehaffy, Thomas A. Frazier, Jr., and William C. Golden, Attys., Dept. of Justice, Washington, D. C., for defendant.

LYNNE, Chief Judge.

Plaintiff is the surviving spouse and executrix of the last will and testament of James S. Robertson, who died on April 7, 1952. Suing to recover the sum of $31,308.77, together with interest as allowed by law, plaintiff contends that the Commissioner erred in disallowing the claim of a marital deduction in the amount of $90,496.52, representing the interest passing to the wife under such will, insisting that such interest qualified under the provisions of Section 812(e) of Internal Revenue Code of 1939, 26 U.S.C.A. § 812(e). The defendant, joining issue, insists that a non-decuctible terminable interest within the purview of Section 812(e) (1) (B) of the Act passed to the surviving spouse under the terms of the will and that it did not qualify for treatment as a marital deduction.

Stated in the alternative, plaintiff plants her case squarely upon these propositions:

(1) The gift over on the death of the spouse before final settlement of the estate was void for repugnancy, the spouse thereby acquiring an absolute fee simple in part of the decedent's estate which qualified for the marital deduction.

(2) The decedent's will grants to the surviving spouse, as a beneficiary of the estate, a power of invasion, sale or disposition which constitutes a power of appointment qualifying for the marital deduction under Section 812(e) (1) (F) of the 1939 Act.

(3) The right of the surviving spouse, as executrix, to distribute her one-half interest in the estate to herself, as beneficiary, and to divide and settle the estate at any time creates in the surviving spouse such a power as will qualify for the marital deduction under Section 812 (e) (1) (F) of the 1939 Act.

(4) The surviving spouse, as a beneficiary, was entitled for her life to all the income from her one-half of the estate and such income was payable at least annually.

Because the court, for reasons hereinafter to be stated, resolves the first three contentions against the plaintiff, discussion of the fourth is pretermitted.

Section 812(e) (1) (B) provides, as the general rule, that an interest is "terminable" and the marital deduction disallowed if (1) the interest "passing to the surviving spouse will terminate or fail" upon the occurrence or non-occurrence of a stipulated contingency or event, and (2) the interest passes for inadequate consideration from the testator to a person other than the surviving spouse, and such other person may thereby enjoy or possess an interest in the property after the failure or termination of the interest passing to the surviving spouse.

■■ Thus a terminable interest obviously may be *either* a contingent interest (i. e., where vesting is subject to a condition precedent) or a vested interest subject to defeasance (i. e., where a vested interest may be divested by the occurrence of a condition subsequent). The critical factor which defeats the deduction is the defeasibility of an interest which will cause it to pass from the decedent to a third person. In order to determine whether in the present case the interest of the surviving spouse is a terminable interest, it is therefore necessary to ascertain the quantum of the estate conferred by the will under the applicable state law. See McGehee v. Commissioner, 260 F.2d 818, 821 (5th Cir., 1958); Helvering v. Stuart, 317 U.S. 154, 63 S. Ct. 140, 87 L.Ed. 154 (1942).

■■ The dispositive portions of the will here involved state in part in Item III:

"I give, devise and bequeath to my Executor and Trustee, in trust, for the benefit of my wife and daughters, all of my property, real, personal and mixed * * * to be divided among my wife and two daughters in the following proportions,—one half to my wife and one fourth to each daughter * * *. If my wife dies before final settlement of my estate, all my estate shall go to my heirs subject to all the terms and conditions of trust herein contained."

Under the Alabama authorities, this provision, standing alone, creates in the surviving spouse a defeasible fee simple (or "qualified", "determinable", or "base" fee). It is the rule in Alabama, employed generally in the case law to determine qualification for the marital deduction, that where technical words of limitation are not used in an instrument creating an estate, a construction which will confer a fee simple is preferred and will be given effect unless it clearly appears from the entire instrument that an inferior estate was intended. Dozier v. Dozier, 201 Ala. 174, 77 So. 700 (1918); Smith v. Nelson, 249 Ala. 51, 29 So.2d 335 (1947); Ala.Code, Title 47, § 14 (1940); Estate of Stallworth v. Commissioner, 260 F.2d 760, 763–64 (6th Cir., 1958).

It has been held in Alabama and in other jurisdictions that a dispositive provision such as that in this case—i. e., a gift in general terms only, followed by a gift over in the event of the death of the first taker before settlement of the estate —creates a defeasible fee at the time of the testator's death. In Pearce v. Pearce, 199 Ala. 491, 74 So. 952, 956 (1917), Item 4 of the will there involved conferred in general terms one-fourth of the residuary estate to Joe Pearce and one-fourth to Clovis Pearce, while item 5 stated as follows:

"In the event of the death of my grandson, Joe Pearce, without issue born to him, before the settlement of my estate, I will and bequeath the interest in my estate hereby willed to him to my grandson, Clovis Pearce. In the event of the death of my grandson, Clovis Pearce, without issue born to him, before the settlement of my estate, I will and bequeath the interest willed and bequeathed to him herein, to my son, Marvin Pearce."

With respect to the nature of the interests given the grandson, the court stated in 199 Ala. at 499, 74 So. at 956:

"The devises and bequest to Joe and Clovis, respectively, were of estates that may be defeated by the provisions of item 5. * * * [T]he estates of Joe Pearce and Colvis Pearce in the residuum were qualified, in that they were subject to be defeated by the happening of the respective contingencies provided for in said item."

To the same effect are In re Wraught's Estate, 347 Pa. 165, 32 A.2d 8; Cooper v. Harkness, 188 Ga. 121, 2 S.E.2d 918; and Rust v. Rust, 211 S.W.2d 262 (Tex. Civ.App.), affirmed 147 Tex. 181, 214 S.W.2d 462.

That in the instant case it was the intent of the testator to impose such a qualification is further indicated by similar provisions in Item III made with respect to the daughters' shares. Whether other provisions of the will, particularly Item X, might indicate an intention to make settlement of the estate a condition precedent to vesting of the beneficiaries' interests rather than a condition subsequent which divests them as in Pearce is unnecessary to decide. For, in either event, the interest of the surviving spouse is a terminable interest under Alabama law unless it is enlarged into an absolute interest or is within the exception contained in Section 812(e) (1) (D).

Item IV of the will states in part:

"[M]y wife or either of my daughters may convey and dispose of any part or all of her share in my estate during her lifetime * * *. [A]ny adult beneficiary of my will shall always have the right, power and authority to sell and convey and fully dispose of any part or all of her interest in my estate and give full and complete title thereto, during her lifetime, *but until* division or partition or allotment of my estate or shares therein to the beneficiaries of my will, my Executor and Trustee shall have full and complete charge of my estate and the management and handling thereof."
(Emphasis added.)

Item X provides:

"During the existence of my trust estate, no individual beneficiary of my will shall take any title to or

right to possession or sale or partition of any part of my estate or property, but complete possession and right to conduct and handle and exclusive right of sale, partition, division and handling shall be in my Executor and Trustee. However, my Executor and Trustee may at any time convey and deliver to any beneficiary of my will complete possession of and title to any part of my property as or on account of the share of such beneficiary in my estate, thereby making such conveyance full, complete and final, as to the property or assets therein included."

It will be assumed for purpose of discussing the contention that the surviving spouse's defeasible fee was enlarged into an absolute and indefeasible interest by a power of disposition given the widow in the will that these provisions do intend to confer an absolute power of disposition on the beneficiaries during the period prior to settlement.

At common law in Alabama, one who took an estate less than a fee simple absolute in realty or an absolute interest in personalty and who was also given an absolute power of disposition over such property was held to possess an absolute interest. E. g., Allen v. White, 16 Ala. 181 (1849); Flinn v. Davis, 18 Ala. 132 (1850). In several early cases this rule appears to have been applied not only to a life estate but also to a defeasible fee coupled with an absolute power of disposition. In Flinn, the testator willed to his daughter certain property over which she was given a power of disposition, but added a limitation over of property undisposed of by the daughter in the event she should die without issue. The executory devise over was held to be void for repugnancy due to the power in the first taker, and the daughter consequently was held to take an absolute interest. In support of the contrary view stated in 96 C.J.S., Wills § 856, at 284 (1957) only one decision, an Illinois case, is cited. The common-law rule was modified by the present Ala. Code, Tit. 47, §§ 76–79

(1940). These provisions were interpreted in Estate of Stallworth v. Commissioner, supra, 260 F.2d at 765, to mean that:

"[I]t is only where no remainder is limited on the estate of the donee of the power that such estate becomes an absolute fee. Where there is a future estate, the interest of the person having a life estate with an absolute power of disposition is a fee absolute as to the rights of creditors and purchasers but subject to the future estates if the power of disposition is not exercised. * * * [T]he provision relating to creditors was intended to permit a levy or execution upon the property for the debts of the donee of the power, and to have the property sold free from the future estate, in satisfaction of the creditors' debt. This provision, as we read it, would not give the widow any greater estate, having a creditor, than she would have without it."

It would appear, therefore, that under Sections 76 through 79, as interpreted by the Fifth Circuit, there is no enlargement into an absolute estate except as to that property which in fact has been disposed of by exercise of the power or has been subjected by creditors to debts of the donee of the power.

There may be some doubt as to whether Sections 76 through 79 changed the common-law rule in respect to qualified or defeasible estates. Section 76 refers only to an absolute power given to "the owner of a particular estate for life or years * * *." Section 77, however, extends the modification also to the case where an absolute power of disposition is given "to any person to whom no particular estate is limited * * *." The meaning of Section 77 is uncertain in that it could refer to a person with a collateral power or to a person with an interest greater than a particular estate—i. e., a qualified fee. One of only several cases found in which Section 77 was applied is Smith v. Nelson, 249 Ala. 51, 29 So.2d 335, 336 (1947), where a will gave realty and personalty to the testator's daughter with a

direction to use the property for support of the testator's wife, stating finally that

"[A]t the death of my daughter, * * *, if she has no heirs, and there being any of the estate left, it should go to my son. * * *."

Concerning this provision the court remarked in 249 Ala. at 54, 29 So.2d at 338 (dictum):

"If the word 'heirs' means 'children', under the allegation of the bill whatever is left of the estate of * * * [the testator] goes to * * [the son] if the testator intended that the devise to * * * [the daughter] was limited to a base fee by the devise to * * * [the son]. Reeves v. Tatum, 233 Ala. 455, 172 So. 247; Montgomery v. Montgomery, * * * [236 Ala. 161, 181 So. 92 (1938)]; Sections 76 and 77, Title 47, Code of 1940."

It may be inferred from this statement that Sections 76 and 77 are considered applicable to a base fee coupled with a power of disposition so as to preserve the limitation over of any portion of the estate not disposed of by exercise of the power. Compare Reeves v. Tatum, 233 Ala. 455, 172 So. 247 (1937), in which Section 77 was held to be directly applicable to a gift of an *unspecified interest* (i. e., neither a fee simple nor a life estate was expressly conferred) to testator's wife with a provision for a gift over at her death since, as stated in 233 Ala. at 457, 172 So. at 249, "no particular estate was given to the wife * * *." And since the purpose of Sections 76 through 79, as indicated in Reeves v. Tatum, supra, 233 Ala. at 457, 172 So. at 249, is to protect limitations over of undisposed portions of inferior estates subject to a power of disposition, it is only logical that its application should extend to defeasible estates in fee as well as to life estates.

It has been held that in order for an interest to be nonterminable for purposes of the marital deduction, it must be so at the time of the testator's death. Estate of Cunha v. Commissioner, 279 F. 2d 292 (9th Cir., 1960). See Sen.Rep. No. 1013, 80th Cong., 2d Sess. (1948), 2 U.S.Code Cong.Serv. p. 1232 (1948). Therefore, it could be said even that Alabama Code, Title 47, §§ 76–79 could never qualify an interest for the marital deduction since, as stated in Stallworth, an estate is never enlarged into a fee absolute until exercise of the power of execution or levy by creditors *after* death of the testator.

Section 812(e) (1) (D) of the Internal Revenue Code of 1939 provides in its pertinent part:

"For the purposes of subparagraph (B) an interest passing to the surviving spouse shall not be considered as an interest which will terminate or fail upon the death of such spouse if—

"(i) such death will cause a termination or failure of such interest only if it occurs within a period not exceeding six months after the decedent's death * * * ; and

"(ii) such termination or failure does not in fact occur."

Discussing this provision, Senate Report No. 1013, 80th Congress, 2nd Session (1948), 2 U.S.Code Cong.Serv. (1948), states at page 1237:

"[A] marital deduction is allowed with respect to an interest which does pass to the surviving spouse even though such interest would have terminated or failed upon the death of such spouse, as long as such termination or failure *could have resulted only* if such death had occurred within a period not exceeding 6 months after the decedent's death." (Emphasis added.)

It was clearly contemplated that this exception was to be available only in instances where it is specified by will or determined by reference to applicable state law that an interest can terminate *only* within six months after a testator's death. No case has been found which sanctions a contrary interpretation. Since there is no provision of the will or in the statutory or case law of Alabama which requires that the estate of Mr.

Robertson be settled within six months after the testator's death, Section 812(e) (1) (D) is simply not applicable here.

Although the Robertson will contains a number of statements possibly indicative of an intention to create an active trust (most notably the reference in Item XI to Alabama Code, Title 58, § 1 (1940), relating to spendthrift trusts), these statements are considered irrelevant inasmuch as the existence of a trust would have no effect on the questions of law presented.

█ A major exception to the terminable interest rule is incorporated in Section 812(e) (1) (F) of the Internal Revenue Code of 1939, as amended by Section 93, Technical Amendments Act of 1958. Generally, a marital deduction is permitted with respect to life interests passing to a surviving spouse if the spouse enjoys other controls over the property which are in the nature of a power of appointment or of complete disposition. Nothing has been found in the terms or spirit of the statute, in its legislative history, in cases, or in the Commissioner's regulations that would indicate in the least that the provisions of 812(e) (1) (F) should not apply to a qualified or base estate in which the only divesting contingency is the death of such estate's owner before a specified time. It would appear, therefore, that if the precise requirements of 812(e) (1) (F) are met, the marital deduction should be available in this case.

The most important and difficult question is whether the testator *intended* the beneficiaries to have the necessary power during the critical period prior to settlement of the estate. The will does contain, most notably in Item IV, references to some sort of power of disposition in the beneficiaries. And it has been held that a wholly *unrestricted* lifetime power of disposition is such a power as is required by Section 812(e) (1) (F). Carlson v. Patterson, 190 F.Supp. 452 (N.D. Ala.1961); McGehee v. Commissioner, 260 F.2d 818 (5th Cir., 1958). Item IV and especially Item X, on the other hand, contain indications of an intention ap-

parently inconsistent with that of giving the beneficiaries such an unrestricted power prior to settlement. These latter provisions are dismissed by plaintiff as intended to relate only to normal administrative powers in the personal representative which, as recognized in Treas. Reg. 105, § 81.47a(c) (as amended by T. D. 5857), would not be repugnant to the existence of the requisite power in the beneficiaries.

█ Support for plaintiff's view is found in the well-settled rule that when a will contains apparently repugnant provisions, a construction is favored which will reconcile the inconsistent clauses with one another and with the general intent of the testator, and which will effectuate all terms of the will. Miller v. Flournoy's Heirs, 26 Ala. 724 (1855); Bell v. Killian, 266 Ala. 12, 93 So.2d 769 (1957); Ralls v. Johnson, 200 Ala. 178, 75 So. 926 (1917). The last clause in Item IV, inasmuch as it refers to normal administrative powers of the executor, can easily be reconciled with a power in the beneficiaries. Item X, however, presents a more difficult question. Regardless of the meaning of "trust estate", the language of that item indicates that the testator evidently contemplated a period in which no beneficiaries, as such, were to have a power to sell or to take any title in the property except by discretionary act of the executor.

The vesting of title exclusively in the executor during administration, although not in accord with the usual rule in Alabama and elsewhere regarding the location of title to realty during administration (absent a direction to the contrary in the will), conceivably might be construed as not inconsistent with a power of disposition in the beneficiaries. For although title to personalty normally is held to lodge in the executor during administration, it is said that upon distribution the title thereto relates back to the time of the testator's death, thereby permitting legatees substantial incidents of ownership during the interim. See 4 Page, Wills § 1586, at 510–11 (3d ed.

1941). Thus it could be argued that the testator did not intend by Item X to withhold from the beneficiaries any controls over the property. But such a contention is, in the opinion of this court, highly artificial and unsound.

■ Also, a beneficiary may retain a right of sale concurrently with a broad power of sale in the personal representative during administration. This principle, and the Alabama cases announcing it—e. g., Crosswhite v. Bradford, 221 Ala. 219, 128 So. 387 (1930), and Parker v. Robertson, 205 Ala. 434, 88 So. 418 (1921)—are relied on by plaintiff to support her contention that Item X intends only to give the executor normal administrative powers not inconsistent with a power of disposition in the beneficiaries. But Crosswhite and the other cases cited by plaintiff are inapposite in that they involve wills which purport neither to confer *exclusive* powers on the executor nor to expressly deny such power to the beneficiaries. The inevitable conclusion is that Item X does not refer to normal administrative powers in the executor and is not reconcilable with an unrestricted power in the beneficiaries to dispose of any of the property to anyone including themselves, as required by Section 812(e) (1) (F).

■ Thus the problem devolves to the question of whether effect is to be given to the provisions of Item IV relating to the wife's power or to Item X. Although it is said generally that a subsequent clause in a will should prevail over a preceding one, this rule should be employed only as a last resort. Miller v. Flournoy's Heirs, supra; Cox v. Hale, 217 Ala. 46, 114 So. 465 (1927). Therefore, it might be fitting nonetheless to find that the surviving spouse was given the requisite power if the language of Item IV clearly had indicated such an intention. But uncertain in meaning as is the language of Item IV, it would require a strained construction indeed to conclude that the will as a whole or even the first clause of Item IV, standing alone, intended to confer on the individual beneficiaries an unrestricted power of disposition during administration.

■ Plaintiff further insists, in the alternative, that the power given in Items VI, VII, and X to the surviving spouse, *as executrix*, to transfer to the beneficiaries full and complete title to their respective shares of the estate constitutes a power of appointment in the surviving spouse which qualifies for the marital deduction under Section 812(e) (1) (F). This assertion raises substantial questions respecting the legal distinctness of individual and representative power during administration, as well as questions regarding the ability of a personal representative to indefeasibly distribute estate property as against potential claims by creditors of the estate. The court concludes that this contention is disposable simply on the basis that such a power in the executrix is not exercisable "in all events." With reference to the statutory requirement that the 812(e) (1) (F) power be "exercisable * * * in all events" Sen.Rep. No. 1013, 80th Congress, 2d Session (1948), 2 U.S.Code Cong.Serv. (1948), states at pages 1239–1240:

> "If the surviving spouse has a power to appoint the corpus of a trust created during the decedent's life, the power must be exercisable, *when viewed as of the date of the decedent's death*, in all events." (Emphasis added.)

Although it clearly appears that the testator's surviving spouse is his preferential choice for his personal representative, it is obvious that as of the time of the decedent's death it was possible that the wife might fail to become executrix. That such a possibility was within the contemplation of the testator is evidenced by the designation of alternate representatives in the will. Such a possibility is recognized in Alabama Code, Title 61, § 75 (1940), which provides for mandatory appointment of alternate executors in the event that the first-named executor renounces his appointment or fails to apply for letters testamentary within thirty days after probate.

In effect, the surviving spouse at the time of testator's death had only a contingent power which was on that account not exercisable in all events. Plaintiff's reliance upon the analogy of the contingent character of this power to the right of a holder of a power of appointment to exercise the power is misplaced. For the determinative factor is the indisputable existence of the power and here the power was not, at the time of the decedent's death, certain to exist in the surviving spouse as executrix.

The only reported decision found in which a marital deduction was claimed on the basis of a power to a surviving spouse as executrix is Markoff v. United States, 187 F.Supp. 805, 807 (D.R.I. 1960), which is not entitled to persuasive weight. In that case the will gave to the spouse a life estate, providing further that:

> "I authorize and empower my Executrix (which term shall be deemed to include any Administrator of my estate with this will annexed) if, in the settlement of my estate it becomes, in her opinion necessary or expedient so to do, to sell or dispose of * * * any or all of my real or personal estate * * * and to execute such deeds and other instruments and to do such other acts as may be necessary to vest a good and valid title, absolutely and in fee simple, in the purchaser or the purchasers thereof."

In holding that the spouse did not have a power which qualified for the marital deduction, the court in 187 F.Supp. at 809 relies primarily on the obvious fact that the power was not unrestricted but adverts also to the capacity in which the donee acquired the power:

> "Here the testator conferred upon Mrs. Markoff no power of sale or disposal of said personalty as the beneficiary of said life estate. On the contrary, the power of sale or disposal conferred by the testator was not only conferred upon her in her capacity as executrix but likewise upon anyone who might serve as administrator. * * *

> "In my opinion the terms of this power of sale or disposal manifested an intention by the testator to limit the power of Mrs. Markoff to sell or dispose of said personalty to sales or disposals in her capacity as executrix in the settlement of his estate, and an intent that she should not have an unrestricted right to sell or otherwise dispose of said personalty * * *."

There remains the subordinate issue relating to the deductibility of attorneys' fees and expenses which, by the terms of the order on pretrial hearing was reserved pending decision of the issue in chief. It is assumed that a refund computed with reference to this limited claim will be made administratively. Accordingly, a judgment will be entered in favor of defendant but jurisdiction of this action will be retained for the purpose of resolving such issue if the administrative process fails to provide appropriate relief.